All right, our last case is Martinez v. Bondi. Mr. McKinney. Good morning. Good morning, your honors, and may it please the court. My name is Jeremy McKinney of the North Carolina Bar. I represent the petitioner Jaime Martinez-Martinez, a Mexican national who has called the United States home since he was 15 years old. We are here because the Board of Immigration Appeals committed two fundamental legal errors. First, the board misapplied the false testimony bar located at 8 U.S.C. 1101, subsection F6. Second, the board misapplied its own standard of appellate review. Now, regarding the former, the statute is clear. There must be an affirmative oral misrepresentation under oath made with the subjective intent of attaining an immigration benefit. Now, here, the BIA said three things on this topic. Number one, petitioner's explanation that he provided a false name to immigration officials during a border encounter in 2006 is inadequate to explain the omission of his entry into the United States under a specific name. This specific name was Juan Sanchez Cabrera. Number two, petitioner didn't challenge the fact that he, quote, initially failed to disclose, unquote, his use of another alias. Number three, and again quoting your honors, we discern no clear error in the immigration judge's determination that petitioner provided false testimony within the meaning of 1101 F6 because he had a subjective intent to deceive in order to obtain immigration benefits as evidenced by his failure to fully and voluntarily disclose his use of aliases until DHS confronted him with evidence. So, can I take a step? So, essentially, this is the legal category mistake that the board confused with omission, with concealment, and they took a statute that only makes it illegal, I'm going to overgeneralize, but broadly speaking, a statute that, generally speaking, only applies if you lie to the IJ and treated it as if it also encompassed lying to immigration officials or DHS officials, right? Okay, so that's, broadly speaking, the argument. Can I tell you my biggest concern about that argument is whether it's been exhausted, and could you please tell me where you think you exhausted that argument before the BIA? Yes, in the petitioner's brief, now, I will readily concede that former counsel spent the majority of the brief's time talking about Nice-Chavez, which had come out after this case was heard. So, by the way, this case, Your Honors, was heard after Pereira and before Nice-Chavez. It was kind of boxed in the middle there. And so after this extensive discussion, counsel spends one paragraph discussing this issue, and in that, that is where counsel provided the explanation that in 2006, strike that, the petitioner acknowledged the encounter in 2006, number one. Number two, the petitioner acknowledged that he provided a different name, that he provided a false name, number two. I thought there was at some point in the examination that the petitioner was asked if his application was true and correct in all respects, and he said, yes, it was. And that the subsequent evidence about the names that weren't disclosed is contrary to that representation, which was made under oath, and that was the falsity. Okay, two issues with that, Your Honor. Number one, that question was asked by the immigration judge to the petitioner, and his answer was not yes. His answer was yes, but there are some things in the application that are not correct. Then if you go about four pages later in the transcript, counsel asked the court, basically the immigration judge asked the petitioner's counsel if he wanted his direct testimony to be his affidavit. Rest on his affidavit for his direct testimony. Counsel said not quite yes for the majority of the direct testimony, but we really need to make some clarifications. One of those clarifications is this 2006 encounter with immigration officials where he did acknowledge that he used a false name. There was one false name, I don't remember which one it was, that didn't come out until there was cross-examination. Is that correct? Not the existence, Your Honor, of the alias, but the precise name. The precise name, what petitioner's testimony all along was, I know I used a different name. I don't remember the specific name. I know I used a different name. I don't remember. He said that consistently and over and over. As a footnote in our opening brief points out, we pointed every page where he was saying that. It was never a straight, I don't know, without some type of clarification as to what he specifically didn't know. What we're getting at here is that... Can I just take you back to exhaustion? I just want to make sure I have this. Of course. Okay. So is the place you're saying this is exhausted, J13, page 5 of his brief to the BIA? I wish I could readily... It's the part of the brief that's got the heading, The Immigration Judge's Decision Constitutes a Clear Misapplication of the False Testimony Bar to Good Moral Character. Yes, Your Honor. That's the relevant page of the brief? Yes. Yes. Is there... I understand you don't have it in front of you, but I guess it's... Is there any other place that you allege this was exhausted? No. Okay. No. And somewhat off topic, but in terms of the procedural history of this case, there is a motion to reopen pending before the Board of Immigration Appeals. We had originally asked for this to be held in abeyance pending that decision. The government opposed that, and this Court denied it, and that's why we're here today. Can we talk about that motion for a minute? Because I know that there is a pending and effective assistance of counsel claim. Is that right? What's the status of that? Your Honor, we have not heard anything from the Board since we filed it. It remains pending. And would that resolve the entire case if that was granted? It would, like this... We haven't moved out this case. It would move out this case because there would be a new hearing if that were granted. And is it still your position that this case should be held in abeyance pending the resolution of that case? At this point, at this stage, we would rely on the discretion of the Court. At this stage, at the point that we... Right, but the petitioner is your client, so I think you need to give us a more direct answer than that. I think that the errors in this case are so grave that we can move ahead with this one without leaving it in abeyance at this point. However, if the Court were to conclude that abeyance is more appropriate at this point, of course we understand that because there is a substantial amount of merit to that motion to reopen that we filed. Well, it seems in the interest of judicial economy, we should reach an issue that we don't have to reach if there's another pending proceeding that would resolve the entire case. There is, except for, Your Honor, in this case, whether counsel engaged in ineffective assistance of counsel does not do anything to shield the fact that the agency made some pretty fundamental errors here. And so having the guidance of this Court to say two things. Number one, that concealment is not testimony. The Supreme Court established that in the 1980s in the Cungas case. And number two, if you are going to find that the petitioner had a subjective intent to deceive, to obtain immigration benefits, then you can't just cite the governing standard. You actually need to explain how this specific, in this case it's concealment, but let's just call it testimony, how this specific testimony was made with the intent to subjectively, or the subjective intent to deceive, when on its face that makes no sense. I understand your argument, but essentially you're asking us to give an advisory opinion to the BIA when, in fact, the BIA may, the same day, issue a ruling saying ineffective assistance of counsel and send the case back. Does that happen on the same day? Well, it certainly wouldn't be, Ed, if it happened on the same day, then it still doesn't take away the fact that this actual error of law occurs. Is the ineffective assistance of counsel claim part of the motion to reopen, or are they two separate things? Your Honor, it is the same. And we are asking for the case to be reopened based on ineffective assistance of counsel. To reopen, like do it all over again to decide whether he's going to get the underlying benefits he's seeking and whether it's barred by the false testimony bar, like basically a redo of everything we've done. A redo of everything you've done. And the reason for that — Is the ineffective assistance of counsel the sole ground in the motion to reopen? It is the sole ground in the motion, because what happened in that case relates to the last part of our briefing here, and that's about the potential due process problems. Number one, they weren't exhausted. The due process element of this not only was not exhausted by former counsel, but he didn't object, raise it, push back with all of the due process problems, the lack of neutrality from the immigration judge. That was clearly happening during the hearing. So is all the briefing done in the motion to reopen? DHS, to my knowledge, did not submit any response. So you're just waiting for a ruling on the motion to reopen? That is correct, Your Honor. Okay. And what's the status of your client currently? Is your client in custody? My client is not in custody. He was provided a bond back during the initial apprehension and arrest and has complied with the conditions of his release. The decision that you may have heard about, Your Honors, that was released last Friday from the Board of Immigration Appeals, which alleges a judge does not have jurisdiction to grant a bond if the person crossed into the United States without inspection, is not retroactive. And so my client should remain out on the conditions of his release. Is there an actual order of deportation in this case? Oh, you're exactly right, Your Honor. No, I'm asking the question. No, there is. There is. This is currently an administratively final order of removal. In the past, we've had clients actually get physically removed and then we had to facilitate their return. That has not happened in this case, Your Honors. I do want to, again, address the – I don't want to look over the second fundamental error here, which was that the board misapplied its own standard of appellate review. What you see over and over in the board's decision is that it was reviewing for clear error. But whether established facts amount to false testimony is not a factual finding. It's a mixed question of law and fact. The BIA owed de novo review on that legal question. So, for example, do we agree? So at some point, your client had a conversation with the immigration authorities and there were things that were said during that conversation. To the extent the IJ made a finding about what was actually said during that conversation, that's unreviewable, right? Unreviewable. To the extent the IJ made a finding about what your client understood the officer's question to be asking, that's also unreviewable, right? What was in his head. Correct. At the circuit court stage, unreviewable. At the board stage, which, again, is the error – Is reviewable for clear error. You would agree that even at the board, that's reviewed for clear error. What's in his head is reviewed for clear error.  I think that in a line of cases where the Supreme Court has said due diligence is a mixed question, exceptional, extreme, and unusual hardship is a mixed question, torture is a mixed question. Sure. It has gotten confusing to practitioners. Yes. Because I do think that intent, when intent is part of the governing standard, it makes it a little complicated. Because, for example, with false testimony. Let me ask you this. To the extent that the IJ – I'm not saying the IJ made this finding, but Twix and NIJ made such a finding and said, I have listened to all the evidence and I am finding that you knew full well what question you were being asked. And I am finding that you deliberately said something you knew was not true. That is a factual finding reviewed by the BIA for clear error and by us not at all, right? It would be – to the extent that you are reviewing the actual factual finding, I completely agree that it would be unreviewable. However, that's when we need to look at court tests, which this court issued after Wilkinson. And we have to look at the procedure involved in reaching that finding. And I think there this court does have jurisdiction to look at that and should exercise that. Well, that procedurally is a different question. I mean, I thought that Supreme Court case, Canungus or however you pronounce it, held that the finding of subjective intent is a factual question. It did. Okay. It did. And again, what I would say to that, Your Honor, is that we've seen in this particular area specifically, we've seen a lot of development in this mixed question. For example, if you look back at a case of my own from 2013 called Garcia, that was cited by Judge Richardson in Ibarra. Everything was essentially reviewed for substantial evidence. There really wasn't much of a distinction between fact and law unless it was really super clear that it was a legal question, like in Jean versus Gonzalez. We've seen a lot of changes in this area over the last decade. And I think that this case kind of heightens that, where this court still has jurisdiction to make sure that the agency is going about its fact-finding in a correct and procedurally sound manner and in a manner that's consistent with due process. Thank you, Your Honor. All right. You've got some rebuttal time. Ms. Frayer, give us your view of things. Good morning, Your Honors, and may it please the court, Alison Frayer for the Attorney General. In this case, the court lacks jurisdiction over both the agency's good moral character determination and the agency's separate discretionary determination that Mr. Martinez-Martinez did not deserve a positive exercise of grace, and therefore the petition for review should be dismissed. Before we get into that, can I just ask you, do you have any information to report about the status of his motion to reopen? Only that it remains pending. And for how long has it been pending? About 18 months. Do you have a sense of how long generally motions to reopen remain pending before the BIA? Not at this time. My generalized understanding was from before. A different time? Yes.  I think my only last question about this is, do you have a sense of, like, what percentage of noncitizens in removal proceedings who lose before the BIA file motions to reopen? It is my sense it is a large number of them. Yes. My perspective is only those who also then file petitions for review because if they don't do that, then obviously I never see them. But I would say it's more than half. It's not 100 percent, but more than half. But it's not uncommon. Oh, correct. Not at all uncommon. Okay. And there's a lot of procedural requirements that must be met, especially with an IAC claim, and I imagine it will be difficult to overcome the discretionary denial of cancellation here on an ineffective assistance of counsel claim where the IJ denied exercise overall, any exercise of his discretion based on the criminal conduct that Mr. Martinez engaged in, as well as his conduct during the removal proceedings, which obviously didn't arise from representation or would be difficult to link those two, I would think. So there's no jurisdiction over the agency's findings of fact underlying the good moral character determination. The Supreme Court has said in both Cungas and Patel that whether testimony is truthful is a factual finding that this court cannot review. Similarly, in Cungas, the Supreme Court said that the subjective intent with which the alien offers that testimony is a question of fact, and that resolves the question under Patel, and this court cannot review it. So can I ask, you're going to respond with exhaustion? I'm aware of the exhaustion argument. I am. So let's posit exhaustions off the table for a second.  But his argument that the BIA confused an omission with false testimony, that would be a legal question, right? It would. If properly exhausted, that would be a legal question. Yes. That this court would have jurisdiction to review. Had he raised it to the board, yes. Okay. What about, and it seems to me that also under our precedent, to the argument is, I agree, we don't have jurisdiction to second-guess the IJ and the BIA's factual findings, but we conclude that the BIA basically didn't do the right, the argument that the BIA misapplied the clear error standard of review because, and again, imagine, let's do a really simple example. Let's say the BIA said, we find no clear error because, because, this is the important part in this hypothetical BIA analysis, because we cannot say beyond a shadow of a doubt that the IJ was wrong. And the argument is like, that is not what clear error means. So to the extent the BIA did that, we would have jurisdiction to review that. Even if we couldn't review the underlying findings, we could review the BIA has misunderstood how clear error review works. That's correct. Even after Patel, this court has considered and sometimes granted the PFR where the alien raises the claim that the board applied the wrong legal standard or legal test. Yes. But here the board did not do that because it was reviewing the factual determinations of the IJ. So the clear error standard was the correct standard to use. And, in fact, the one required by regulations. But what about the argument that your friend on the other side raises that is based on this court's precedent that says the BIA has to provide like a reasoned explanation. They can't just say, in response to an argument that the IJ committed clear error, the BIA cannot simply say, we find no clear error. And then the listener thinks, why? And the BIA is like, I don't have to tell you that. The board. You agree that we would have jurisdiction to review that, too, because then the BIA has not provided a reasoned explanation. Like simply saying, we find no clear error is not a reasoned explanation. That would be correct. Yes. That's not what happened here. No, but that would be right. It would be. Yes. But here the board did provide a reasoned explanation. So Mr. Martinez-Martinez has never offered an explanation for his failure to list one of the aliases, Vicente Martinez-Martinez. Is that an omission, failure to list? It is until you testify under oath that your application is complete and correct and that your affidavit is complete and correct, and those things don't say it. But didn't he say it's complete and correct, except there are some things that are not exactly right? Yes. And then there was a pause in the hearing, and Mr. Martinez-Martinez and his counsel worked together to correct the application. And then they came back, and he swore that the contents of the recently amended application were complete and correct. And at that point where he says, yes, here I have it right here, the record at 121, the IJ asks, and is everything you've stated in this affidavit the truth, sir? He says, yes. So that's the oral statement that you're alleging is false testimony. Correct. And he says it again on the page before. So there was one other alias that had not been disclosed previously. Is that correct?  And this came chronologically after what you just read? Correct. Okay. So he's used three aliases in his years in the United States, one to work, and that was listed on the cancellation application. One at the border in April 2006 that was not listed on his cancellation application or affidavit, but was mentioned at the very close of his direct testimony. And another at the border in June 2006 that didn't come up until DHS presented him with evidence. And at no point did Mr. Martinez-Martinez affirmatively say, there was another encounter at the border where I used an alias, but I can't remember what name I gave. I've said so many names over the years, I can't remember what name I gave in June 2006. So again, that's an omission. You just said at no point did he say. I think that's the definition of an omission. That's true. But when he's asked to list all the aliases he's used, listing fewer than all of them becomes a deliberate misrepresentation. An omission or a concealment is where if no one had ever asked him about additional names, then it would not be false testimony under 1101F6 if he didn't provide them. So can we look at his actual application? Yes. This is 624.  I think it's J, yeah. The page I'm looking at says J624. Sorry, this one's a big one. Yes. And let me preface this by, I was a government lawyer once, and I had to deal with confusing badly written government forms sometimes when I was a government lawyer. So question 15, I have been known by these additional names. That's what it actually says. And it doesn't even actually say list every name you've ever used. But let's posit for the sake of argument that probably that's best interpreted to mean list all of them, even though that's not actually what it says for reasons that I'm sure are complicated and path-dependent about this form. So imagine a world in which his testimony at the hearing is true, which is that he did subjectively know that he'd used another name other than Jaime Martinez Hernandez. But when he filled out this form, he did not remember what that other name was. And I'm looking at question 15. It says I have been known by these additional names. If a noncitizen genuinely knew they'd used another name but genuinely couldn't remember it, how are they supposed to fill out field 15? Because it doesn't say if there are names you can't think of, you should mention that too. It doesn't say that. It says I have been known by. But it also doesn't say if you can't remember the exact name, don't bother telling us. I think that someone who was honestly, genuinely trying to be fully honest would list their use of an alias, but I can't remember. That's not the legal standard. The legal standard is whether. . . So the question that I just asked at the hearing is everything you said in your application true, not, does it reflect what your mother taught you would be ideal behavior in all situations of like, just in case anybody might be misled or confused, I should say in the interest of full disclosure that. That's not what this form says. No. And that's also not the legal standard for false testimony, right? That's right. So I mention that not because that's the false testimony, but because it's indicative of the good moral character, which is, after all, where we're driving with this. But the important part is that the IJ asked if everything was true. He said it was. And the IJ did not follow it up. Did you leave out anything that in the interest of full disclosure, you probably should have. . . The IJ did not follow up with that question, right? No, and he didn't have to. And then later in the hearing, Mr. Martinez-Martinez testified that when he told the IJ everything was complete and correct, that was not true. He told the IJ that he had previously given untrue statements under oath previously in the hearing that same day. So it's not really in dispute that Mr. Martinez-Martinez provided false testimony. Mr. Martinez-Martinez simply says that it's understandable because he couldn't remember the use of this name. But that's also not the legal standard. You can give false testimony if it's understandable that you forgot the details. You need to answer the questions accurately and completely. And Mr. Martinez-Martinez conceded on the stand that he didn't do that when he answered the IJ's question about the accuracy of his application. Where does it say on this form I have to be accurate and complete? I definitely can't lie on this one. Let's posit that I agree with you, that I definitely can't lie on this form. But where does it say that I have to include everything that might possibly be relevant? I swear on JA 631, the part where the alien signs it in front of the IJ. It says they are all true to the best of my knowledge, taking into account the corrections that were numbered. So he's affirming by signing it that it is true. And then out loud, he confirms that everything in the affidavit is the truth, but it's not true to act like you've used one name when you didn't. And he acts like. Acting like is not a false statement. Just getting back to your false statement, there was one statement that you said was the basis of your whole argument, that there was a false statement. Is that the same statement that the BIA relied on in its decision? I think yes. Where? The board is saying, the board is affirming the IJ's decision, right? So they kind of need to be read together because the board is affirming. They didn't explicitly adopt it. So I think we're only limited to reviewing just the BIA decision, unless it explicitly adopts the IJ decision. The phrase I've seen is adopt or affirm. So where the board is affirming a portion of the IJ's decision, this court can look through the board's decision to the IJ's decision without requiring actual adoption. So your position is to review and vote? Yes. Because of the review under clear error, that's what makes the most sense. You can't, it would be difficult to look, well really it shouldn't be reviewing anything because of the jurisdictional argument. But if you get down into it, yes, you would have to look through the board's decision to the IJ's decision to support the board's decision where the board is doing clear error review. So the board is saying on probably JA 3 or 4, the second page of the board's decision, the first full paragraph right in the middle, the respondent does not establish clear error in the IJ's finding that he omitted aliases and provided inconsistent testimony regarding his dates of entry into the United States. Where's the statement? In omitted, again omitted, inconsistent testimony. Where is this false statement? Where is the BIA saying there is a false statement? And what is that statement? So part of this I think is a mark of petitioner's failure to exhaust his concealment argument. Because the board wasn't aware that the petitioner was challenging the IJ's articulation of the false testimony bar or something like that. Because the board wasn't aware of where this case was going to go later, they didn't respond to that. So I think some of the reason the board did their decision this way was a mark of petitioner's failure to exhaust. They were affirming the IJ's decision and responding to the arguments made before them, which is all we can ask. So I agree, though, it doesn't say exactly what the false statement was. Even if we assume, which I'm not sure I agree, that we review both the BIA and the IJ, and even if we assume, which I'm not sure I agree, that there was a failure to exhaust, going back to the IJ's decision then, where is that false statement? Rather than a concealment or I'm confused. The board's, well, first off, the I'm confused statement is That's not a false statement. The IJ says it is. Where is the false statement? Okay, so the false statement in the IJ decision is at IJ 6. 1, 2, 3, 4. Sorry, I can't find that in the record. I see specifically as failure to disclose. Yes, so the 1, 2, 3, 4. The material fact was not disclosed. The paragraph above, the court finds the respondent failed to disclose all his prior entries. I know it uses that phraseology, but when you're saying it's complete and it's not, that becomes the lie. It's not a case of no one asked him so he didn't tell him. Where you're asking for the complete answer and you give only part of it, that's more than failure to disclose. For example, the IJ once asked a petitioner, did you use a different name to work? And he says, yes, I used the name Jaime Martinez Hernandez. That would not be a false statement, even though there were other aliases waiting in the wings, because the question had been, did you use an alias to work? And he says, yes, and provides it. So that is the sort of failure to disclose that would not be the false testimony. But where you're asking for everything and you only give part of it, that's when it becomes an affirmative misstatement. You're asking us to find that if an IJ or PIA says that there was a failure to disclose, that that is a false statement. That seems to run directly contradictory to what the Supreme Court has said, that you need an affirmative statement. You do. But here the affirmative statement is, I've told you everything, when that's not true. So it would not always be true. That's fine if that's what the IJ based the decision on. Yes. I don't see that anywhere in the decision. That's your argument. It's not here.  I think we may have to agree to disagree on that. I do see it here. Can you show me where? The IJ says, the court finds that the respondent failed to disclose all of his prior entries into the U.S. and use of additional names as required on the application for relief and in response to specific questions during testimony under oath. So when he's saying that he said everything and he didn't, that's the false testimony. That's our argument anyway. But in any event, the concealment definitely was not exhausted. So the brief to the board. So let's talk about that. I have the brief to the board in front of me. I'm looking at an argument heading that says, the immigration judge's decision constitutes a clear misapplication of the false testimony bar to good moral character. You don't think that's broad enough to encompass this claim? No. Not that the IJ improperly relied on concealment or failure to disclose rather than an affirmative lie under oath, particularly where the paragraphs below, there's some boilerplate. But then the main. Well, hold on. One of those you're going to skip because paragraph two says, for purposes of the INA, false testimony is limited to, quote, oral statements made under oath with a subjective benefit, then cites the Supreme Court. Right.  So that's the correct legal standard. That is. But that part, the next, I think it's the next sentence, but there's a next part in Cungus that says failure to disclose is not enough, but it's not quoted here in this brief. And the next sentence says that inaccurate testimony resulting from poor memory or mistake do not constitute false testimony. And that's the part that's picked up in the next paragraph that's the application. It's about I just, you know, I just forgot the final alias. Can I ask you a question that must come up literally all the time, but I realize, and this is genuinely a question because I don't know the answer to this. So what if the noncitizen's assertion is the BIA made a mistake? Not the IJ made a mistake. The BIA made a mistake. And then we come before this court and the government says you didn't exhaust it. And then we say I did not know the BIA was going to make a mistake. It's a little hard for me to exhaust a claim that the BIA made to make a mistake that I didn't know. How does that work in the exhaustion context? So that's actually Santos-Zachariah, a Supreme Court case recently, in which the board allegedly made an error and the alien brought it up before the Fifth Circuit Court of Appeals. And the Fifth Circuit said that it wasn't exhausted because you had to file a motion back before the board. And they thought we said you don't have to do that. If the BIA just comes in and makes a mistake, how am I supposed to exhaust the argument that you made a mistake in resolving my case? Exactly. So where the board introduces the alleged error, the proper forum to raise that in would be this court. It's where you're complaining about something that the IJ did and that the board has the power to correct. So you don't have to raise some kind of an equal protection claim or something like that before the board because they can't rule on the constitutionality of the statute. That can wait until the Court of Appeals. But anything that the board has the power to correct must be raised to them. And so help me understand. So if he were to try to argue that someone were inclined to think that, well, to the extent that the IJ made this conflation mistake, the BIA also made this conflation mistake. Because I will say, when I read the BIA's decision, it also looks like it's conflating a false testimony with an omission. What would be your argument for why? So respond to the following argument. Of course this is exhausted. His argument before us is that the BIA conflated two things that are different. I don't have to exhaust that. What's your response to that? Because the board is affirming the IJ's decision, the error would have been introduced if there were one. The error would have been introduced by the IJ finding those two things. And the board would have been able to say, had it been properly apprised of the argument and if it agreed, that this was concealment rather than an affirmative misstatement and so could send it back to the IJ for a new hearing. The important thing to remember is that at the time Petitioner was testifying, these dates and entries were critical to his eligibility. Because at the time he had to show 10 years of physical presence from the date he got his notice of hearing. And these entries that he was difficult in testifying about, the entries and the names and everything, they all fell within that window. So that's part of what's motivating the IJ here, I think. Okay. Thank you very much. Mr. McKinney, you've got a couple minutes left. Thank you again. I just want to make three brief points. First, to Judge Berner's question, the standard is affirm and adopt. It is affirm and adopt. And I apologize, Your Honors, because this opinion just came out last week. But Judge Winn really digs into this in an immigration case that was published by this court last week where he talks about that. And so basically what Judge Winn was saying is, okay, we may need to consult with the immigration judge's decision because there's some gaps here in trying to figure out what the agency was saying. But if you're talking about things that the Board did not really go into at all, we don't consult the immigration judge's decision on that. So it's not just affirm, it's affirm and adopt, and there was no adoption in this case. Number two, it is a— That will often be the case in the clear error context, right? Because the Board is going to say we find no clear error with the IJ said. I mean, it seems like we will almost inevitably have to look at what the IJ said to figure out if the BIA got the clear error standard wrong, right? Correct, correct. Okay. Yes. And here we've got to actually go with what the agency said. The immigration judge, the Board of Immigration Appeals, and my friend here, they all used different versions of didn't say, failed to say, failed to disclose because, Your Honors, his testimony was actually truthful. He did acknowledge that the critical legal issue here, I would agree with my friend, is whether he disrupted his continuous physical presence. How does he accomplish that by not knowing whether he said his name was Jaime or Juan when he acknowledged that I did leave in 2006? I did leave. I was encountered by immigration authorities, and I gave a false name. And what they're hanging their hat on here is that he didn't know whether he used the name Juan or not when the 42B form itself does not address that precise question. There is no false testimony here, which is why they have to resort to omission, and the Supreme Court has made clear that that's not good enough. I want to close with the second part of false testimony, and that is in Patel, whether we agree with it or not, the immigration judge identified a motive, that the guy had checked a U.S. citizen on a driver's license form to get a Georgia driver's license. There is no motive identified here, and what they did instead was create a tautology. He had an intent to deceive because he deceived. Again, thank you so much for your time. All right, thank you very much. I want to ask the clerk to adjourn us for the day, and we'll come down and re-counsel. The honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: G. Steven Agee, Toby J. Heytens, Nicole G. Berner